IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNY WONG, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 19-cv-08427 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ALEJANDRO MAYORKAS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Johnny Wong, Wanming Mei, and Mei's minor child J-M- have brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–06, seeking relief from the denial by the U.S. Citizenship and Immigration Services ("USCIS") of Wong's Form I-130, Petition for Alien Relative, on behalf of Mei and her two daughters.[1] Specifically, Plaintiffs claim that they proved their bona fide marriage by a preponderance of the evidence and that the USCIS's denial of the I-130 petition was arbitrary and capricious. Now before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Plaintiffs' motion (Dkt. No. 20) is denied and Defendant's motion (Dkt. No. 21) is granted.

### BACKGROUND

Wong, a United States citizen, and Mei, a native and citizen of China, have been married since May 7, 2013. (Certified Administrative R. ("CAR") 1[2] at 195, 252, Dkt. No. 22-1; CAR 2 at 256, Dkt. No. 22-2.)

---

[1] When referring to both Wong and Mei, the Court uses the term "Plaintiffs." When referring to Wong or Mei separately, the Court refers to each by his or her name. In addition, the Court notes that Mei's older daughter is no longer a beneficiary of this petition as she is older than 21 years of age.

[2] The Certified Administrative Record ("CAR") consists of two filings, CAR Binder 1 and CAR Binder 2. (Dkt. Nos. 22-1, 22-2.)

On May 14, 2013, Wong filed a Form I-130 on behalf of Mei and her two daughters. (CAR 1 at 195–252.) On October 3, 2013, Wong and Mei appeared for a USCIS interview regarding the I-130 petition. (*Id.* at 173–77, 182.) The USCIS noted various inconsistencies in Plaintiffs' statements during the interview. For example, when asked separately where Wong proposed to Mei, Wong responded that he had done so "at home" and "in the living room." (*Id.* at 173.) Mei, on the other hand, stated that Wong had proposed to her at a restaurant and that patrons of the restaurant clapped and cheered for the couple. (*Id.* at 177.) Because of such inconsistencies, the USCIS referred the case for further investigation, requiring a site visit to Plaintiffs' stated residence and an agency Statement of Findings ("SOF"). (*Id.* at 160–91.)

Three years later, on August 16, 2016, the USCIS conducted a site visit at Plaintiffs' stated residence of 241 West 25th Place in Chicago, Illinois. (*Id.* at 163–67.) There, USCIS officers did not find many of Wong's clothes or personal items. (*Id.* at 163 ("There were no shirts, underwear, t-shirts, or socks that belonged to Wong.").) Wong stated that some of his personal effects were at his parents' home, where he stayed occasionally. (*Id.*) Further, when asked to identify which toothbrush Wong used, Mei and Wong pointed out different toothbrushes. (*Id.* at 163–64.) Based on this visit, the USCIS determined that Wong did not live at that residence with Mei and her daughters. (*Id.*) Instead, the USCIS believed that Wong resided with his parents at 2929 South Elias Court. (*Id.* at 182.)

On November 30, 2016, the USCIS issued a Notice of Intent to Deny ("NOID"). (*Id.* at 158–59.) The NOID stated that Plaintiffs had "not established [by a] preponderance of evidence" that their marriage was bona fide, and that the marriage "appear[ed] to be for obtaining an immigration benefit only." (*Id.* at 159.) On December 30, 2016, Plaintiffs responded with affidavits from loved ones and other documentation in an effort to demonstrate the validity of

2

their marriage. (*Id.* at 17–157.) Unpersuaded by the supplemental documentation, the USCIS denied the I-130 petition on April 11, 2017, stating that Plaintiffs "did not me[et] [their] burden of proof in demonstrating that [their] petition should be approved." (*Id.* at 1–3.)[3] The USCIS allowed Plaintiffs 30 days to appeal its decision to the Board of Immigration Appeals ("BIA"). (*Id.* at 3.)

Instead of appealing to the BIA, however, Wong filed another I-130 petition on behalf of Mei and her two daughters on or around May 11, 2017. (CAR 2 at 252–346.) Mei filed a Form I-485 Application for Adjustment of Status at the same time. (*Id.*) On March 1, 2018, Plaintiffs attended a second USCIS interview related to the new I-130 petition and I-485 application. (*Id.* at 209–25.)

During the 2018 interview, the USCIS discussed with Plaintiffs for the first time the fact that Mei's ex-husband, Dejian Mei, is Wong's maternal uncle. (*Id.*) This information and Plaintiffs' proceeding testimony raised concerns for the USCIS. For example, when asked if he knew that Dejian Mei was his mother's brother, Wong responded that he did not know and that he would ask his mother. (*Id.* at 217.) But Wong did testify that he had previously met Mei's ex-husband for a meal during her family's 2013 visit to Chicago (*id.* at 216–17 ("I met him several times.")), despite not having mentioned this information to the USCIS during his first interview (CAR 1 at 172–76). Further, upon being asked whether her ex-husband had any relatives in the United States, Mei responded in the negative. (CAR 2 at 211.)

On August 14, 2019, the USCIS issued an NOID to Plaintiffs stating that Plaintiffs had not met their burden of establishing a bona fide marriage, in part because of concerns regarding Wong's relationship with Dejian Mei. (*Id.* at 201–04.) On September 18, 2019, in response to the

---

[3] Wong's I-130 petition on behalf of Mei's minor child, J-M-, was not denied on that date. Instead, the USCIS denied the petition on behalf of J-M- on October 1, 2019, the same date that the second petition on behalf of Mei was denied. (CAR 2 at 1–2, 7.)

3

NOID, Plaintiffs submitted further documentation, including the affidavits that they had previously filed, tax forms, bank statements, and other evidence in support of their petition. (*Id.* at 16–20.)

The USCIS ultimately denied the I-130 on October 1, 2019. (*Id.* at 10–15.) In its decision letter, the USCIS stated that Plaintiffs "[did] not submit[] sufficient documentary evidence to establish eligibility for the benefit sought. Therefore, the petition [was] denied." (*Id.* at 14.) Separate from its conclusion, the USCIS also noted that it had "determined that [Plaintiffs] attempted or conspired to enter into a marriage for the purpose of evading immigration laws." (*Id.*) Finally, the denial letter explained that Plaintiffs had 30 days to appeal this decision to the BIA. (*Id.* at 15.)

Rather than appeal to the BIA, on December 26, 2019, Plaintiffs filed their complaint with this Court, seeking declaratory and injunctive relief. (Compl., Dkt. No. 1.) Now before the Court are Plaintiffs' motion for summary judgment and Defendants' cross-motion.

## DISCUSSION

Plaintiffs challenge the USCIS's final decision under the APA. "Judicial review of an agency's final determination follows standards quite different from those applied in a typical summary judgment proceeding." *J.N. Moser Trucking, Inc. v. U.S. Dep't of Lab.*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004). Specifically, 5 U.S.C. § 706 sets out the standards and the reviewing court's scope of review. To start, a court's review under the APA is limited to the CAR, upon which the agency must base its decision. *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009). The court's review is deferential to the agency. *Ogbolumani v. Napolitano*, 557 F.3d 729, 732–33 (7th Cir. 2009). As a result, the court's scope of review is narrow and it "is not

4

to substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (internal quotation marks omitted).

Under APA review, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). In coming to a determination about arbitrary and capriciousness, the district court must "satisfy [itself] that the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Ind. Forest All., Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 859 (7th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Stated differently, the reviewing court must find a "rational basis" for the agency's decision that is supported by the CAR. *Bagdonas v. Dep't of Treasury*, 93 F.3d 422, 425 (7th Cir. 1996). An administrative decision should be upheld "as long as the agency's path may be reasonably discerned." *Motor Vehicle*, 463 U.S. at 43 (internal quotation marks omitted).

### I. Bona Fide Marriage

The central question in the present case is whether the USCIS acted arbitrarily and capriciously in denying Plaintiffs' I-130 petition. To obtain approval of an I-130 petition, the petitioner bears the burden of proving by a preponderance of the evidence that the petitioner and beneficiary spouse intended to "establish a life together at the time of marriage." *Cassell v. Napolitano*, No. 12-CV-9786, 2014 WL 1303497, at *8 (N.D. Ill. Mar. 31, 2014); *Matter of Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988). Evidence of intent may include, but is not limited to, "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding

courtship, wedding ceremony, shared residence, and experiences." *Matter of Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1983). If the petitioner's application does not demonstrate by a preponderance of the evidence that the petitioner and beneficiary intended to establish a life together, the I-130 petition will be denied.

Upon review of the USCIS's decision, this Court finds that the agency's denial of Wong's I-130 petition was not arbitrary and capricious. To the contrary, the USCIS outlined a reasonably discernible path to its decision that was supported by the CAR. Specifically, the USCIS's decision letter pointed out unexplained inconsistencies in Plaintiffs' testimony and made clear that Wong's familial relationship with Mei's ex-husband concerned the agency. For example, USCIS wrote to Wong:

> You claimed that you have not seen your uncle, De Jian Mei. . . . You claimed that you had never met [Mei] before she visited your sister in Chicago and that nobody said anything to you about Wanming Mei and your uncle being married. Although this may be true, during your interview on March 1, 2018, you testified that you had a meal together and have met your spouse's ex-husband and your uncle, De Jian Mei, when he came to visit in January 2013.

(CAR 2 at 12.) The USCIS also identified conflicting testimony by Mei, who "failed to indicate that her ex-husband came also with [her and her daughters to Chicago]" in January 2013, or that Wong and Dejian Mei "actually had a meal together" during the 2013 visit. (*Id.* at 13.) Though Plaintiffs offered some explanations in an attempt to rebut inconsistencies regarding Wong's uncle—for example, that Wong had "never seen" his uncle before (*id.* at 34)—the USCIS did not find Plaintiffs' arguments "persuasive." (*Id.*) In sum, the USCIS concluded that Plaintiffs "failed to address the explanation that the beneficiary's ex-husband is the petitioner's uncle or that the petitioner is the beneficiary's children's uncle so they have a close relationship." (*Id.* at 11.) Given the remaining concerns that the USCIS articulated regarding Wong's uncle, and Plaintiffs'

6

inadequate explanations of this familial relationship, the USCIS had a rational basis for finding that Plaintiffs did not prove a bona fide marriage by a preponderance of the evidence.

The USCIS's decision letter also demonstrates that the agency considered all the evidence provided by Plaintiffs and described its impact on the agency's determination. The USCIS's six-page decision letter addresses each submission in Plaintiffs' response to the second NOID: (1) Plaintiffs' counsel's letter; (2) Plaintiffs' affidavits; (3) landlord Wing Lau's affidavit; (4) a 2018 Form 1040; (5) Citi Bank, South Central Bank, BMO Harris Bank, Chase Bank, and U.S. Bank account statements; (6) a Costco membership card; (7) ComEd and People's Gas utility bills; (8) evidence of Transamerica life insurance; (9) evidence of State Farm auto insurance; (10) evidence of a motor vehicle purchase from Toyota; and (11) a Certificate of Title of a vehicle. (*Id.* at 11–15.) The USCIS took the same approach in its second NOID, considering all of Plaintiffs' initial submissions for Wong's second I-130 petition. (*Id.* at 21–24.) In both documents, the USCIS explains why Plaintiffs' evidence does not support a finding of a valid marital relationship. For example, the USCIS notes that, while Plaintiffs' State Farm automobile policy covered Wong and Mei's 2013 Toyota Prius, the policy stated that the car was principally driven by "a divorced male"—Wong—and that the assigned driver—Mei—was also "divorced." (*Id.* at 13–14.) Additionally, Plaintiffs submitted copies of their deposit account statements for South Central Bank and BMO Harris Bank. (*Id.* at 13.) But the USCIS found that each statement listed solely online transactions and that the accounts had minimal average balances. (*Id.*) Further, Plaintiffs did not provide information regarding who was responsible for the South Central and BMO Harris accounts. (*Id.*) In this way, the USCIS's decision shows that the agency "weighed the evidence, arrived at a rational conclusion in light of the applicable burden of proof, and articulated its reasoning." *Cassell*, 2014 WL 1303497, at *10.

Plaintiffs contend that, rather than considering the evidence, the USCIS dismissed or discounted evidence altogether. The Court disagrees. The USCIS attached different weight to each piece of evidence, which is "precisely the job of the agenc[y] in determining whether a petitioner has put forth enough evidence to be entitled to the immigration relief or benefits sought." *Id.* at *8. Beyond considering the evidence, in its decision letter, the USCIS "fleshed out why it found each piece of [Plaintiffs'] evidence unpersuasive." *Ogbolumani*, 557 F.3d at 734–35. The USCIS is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," and nothing more. *Rashiah v. Ashcroft*, 388 F.3d 1126, 1130–31 (7th Cir. 2004). The agency's final decision as articulated in its decision letter satisfies this standard.

In addition to reasons directly stated in the USCIS's decision letter, the record contains other information that supports the agency's decision. For example, Wong and Mei's 2013 interview revealed inconsistencies in their testimony, such as their accounts of the events surrounding Wong's marriage proposal. (CAR 1 at 173–77.) Specifically, Wong stated that he proposed to Mei "at home" and "brought her flowers and a ring." (*Id.*) But when asked the same question as Wong, Mei responded that Wong had proposed to her at an "eating place" and that others in the restaurant clapped and cheered when she said "yes." (*Id.* at 177.) Additionally, during the USCIS's site visit in 2016, agents found none of Wong's clothing or personal effects in the residence and concluded that he did not live with Mei and her daughters. (*Id.* at 163–64, 168 ("A site visit was completed by CHI FDNS and it appears that Wong does not reside at the address claimed. It is believed that he resides at 2929 S. Elias Ct. in Chicago, IL with his

parents.").)[4] Lastly, the speed at which Plaintiffs married—four months after they initially met—raised suspicions. (CAR 2 at 10–15.)

Ultimately, the USCIS's decision considered all relevant information and demonstrated a rational connection between the CAR and the agency's denial of the I-130 petition. As a result, the Court is satisfied that the USCIS did not act arbitrarily or capriciously in finding that Plaintiffs did not establish by a preponderance of the evidence that they intended to establish a life together.

## II.     Section 204(c) Finding

The parties further disagree as to whether the USCIS has demonstrated the requisite evidence to establish a finding of marriage fraud under INA § 204(c). 8 U.S.C. § 1154(c). Under § 204(c) of the Immigration and Nationality Act ("INA"), the USCIS cannot approve an I-130 petition if "substantial and probative evidence" supports a finding that the beneficiary entered, attempted to enter, or conspired to enter a marriage "for the purpose of evading the immigration

---

[4] According to Plaintiffs, Wong remembers the site visit differently, and the CAR does not contain photos taken by the visiting agents of his belongings. But "there is a presumption of legitimacy accorded to the Government's official conduct." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also INS v. Miranda*, 459 U.S. 14, 18 (1982) (applying presumption of regularity to review of visa application decision). To rebut this presumption, "clear evidence is usually required." *Id.* Given that Plaintiffs offer no such clear evidence here, the Court presumes that the USCIS agents' summary of the site visit was accurate and comprehensive, with no photos excluded from the agents' summary.

Plaintiffs also suggest that language barriers for Wong and Mei may have contributed to miscommunication during the site visit. But the USCIS considered this argument and responded to it in its final decision letter, stating that, despite any language issues, the evidence still indicated that Wong did not live in Plaintiffs' claimed residence. As the USCIS explained:

> You also allege that there could have been a communication issue due to the fact that there was no translator present at the time of the site visit. But you told officers that you live at your mother's house once a month. [T]he officers asked you to show them your personal items that are used for daily grooming and you could not. The fact that the officers could not determine that you actually live at the residence, and that you could not easily prove that you do reside at 241 West 25th Place in Chicago is a troubling discrepancy.

(*Id.* at 2–3.) Because the USCIS considered Plaintiffs' argument and had a "rational basis" for its decision that is supported by the CAR, the Court finds that USCIS satisfactorily addressed the potential language concerns raised by Plaintiffs. *Bagdonas*, 93 F.3d at 425.

laws." 8 U.S.C. § 1154(c). If a fraudulent marriage is suspected, petitioner bears the burden of showing that the marriage is bona fide and "not entered into for the primary purpose of evading the immigration laws." *Fliger v. Kelly*, No. 15 C 5704, 2017 WL 2720430, at *4 (N.D. Ill. June 23, 2017) (internal quotation marks omitted). If the petitioner does not rebut the USCIS's substantial and probative evidence that the marriage is fraudulent, the USCIS can deny the I-130 petition on the basis of § 204(c). Denying a petition on that basis is "separate and distinct from the agencies' determination regarding whether the petitioner has sustained his/her burden [of] establishing a bona fide marriage." *Cassell*, 2014 WL 1303497, at *10. In terms of its practical effect, a finding of marriage fraud under § 204(c) bars the intended beneficiary from any subsequent petitions, including those precipitated from bona fide marriages. *See id.*

Plaintiffs argue that the USCIS did not directly make a finding of marriage fraud and that, even if the agency had done so, it did not have substantial and probative evidence to support such a finding. Defendants respond that the marriage fraud finding is clearly articulated in the USCIS's decision, and that the agency also supported its finding with the requisite substantial and probative evidence.

The Court concludes that the USCIS's decision indicates that § 204(c) applied, and that the USCIS identified substantial and probative evidence in the record of fraud. Specifically, the decision defines a "sham" marriage before directly stating that "[i]t appears that [Plaintiffs] conspired to enter into fraudulent marriage for the primary purpose of evading immigration laws," and that the "USCIS ***determined*** that [Plaintiffs] attempted or conspired to enter into a marriage for the purpose of evading immigration laws." (CAR 2 at 11, 14 (emphasis added).) Although the decision does not use the exact language that § 204(c) applied, the Court finds the USCIS's statements altogether clear. Further, under arbitrary and capricious review, the Court will "uphold

a decision of less than ideal clarity if the agency's path may reasonably be discerned." *St. Clair v. Sec'y of Navy*, 155 F.3d 848, 851 (7th Cir. 1998) (internal quotation marks omitted). And here, the Court can reasonably discern the USCIS's path toward finding marriage fraud. To find otherwise would be to read ambiguity into the decision.

Beyond the clear finding of marriage fraud, the USCIS also points to substantial and probative evidence in the record of § 204(c) fraud. The agency's NOID from August 14, 2019, for example, lays out much of the agency's rationale for the finding. (CAR 2 at 201–04.) This notice lists various pieces of evidence of fraud, including that Mei's ex-husband is Wong's uncle, and that Wong testified during his USCIS interview about not knowing this fact. (*Id.* at 203.) The NOID also offers that, during the site visit conducted at Plaintiffs' claimed residence, Wong could not point to any clothes or personal items in the household, as Wong admitted those items were located at his parent's home. (*Id.* at 203.) Further evidence from the record also indicates that Wong's and Mei's responses during their separate USCIS interviews were not consistent on basic marital questions. (CAR 1 at 173, 177 (noting that Wong stated that he proposed to Mei "at home" and "in the living room," while Mei remembered him proposing in a restaurant full of patrons who clapped for the couple).) As a whole, the evidence cited by the USCIS constituted substantial and probative evidence of a fraudulent marriage.

As a result, the Court determines that the USCIS made a finding in its decision that § 204(c) applied to Plaintiffs, and that the USCIS presented substantial and probative evidence in support of that finding.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 20) is denied, and Defendants' cross-motion for summary judgment (Dkt. No. 21) is granted. The Court

finds that the decision of the USCIS was not arbitrary and capricious under the APA. The Court further concludes that the USCIS's decision found that INA § 204(c) applied to Plaintiffs, and that the USCIS's finding was supported by substantial and probative evidence.

ENTERED:

Dated: March 31, 2023

_____
Andrea R. Wood
United States District Judge